## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 27 2018, 9:23 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kurt A. Young
Nashville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Adam Thomas Nowak,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 27, 2018

Court of Appeals Case No.
49A04-1710-CR-2482

Appeal from the
Marion Superior Court

The Honorable
Shatrese M. Flowers, Judge
The Honorable
James Snyder, Commissioner

Trial Court Cause No.
49G20-1701-F5-3031

**Kirsch, Judge.**

Adam Thomas Nowak ("Nowak") appeals the revocation of his probation, contending that the trial court abused its discretion when it imposed the entirety of two-year suspended sentence.

We affirm.

## Facts and Procedural History

On February 27, 2017, Nowak pleaded guilty to one count of Level 6 Felony possession of methamphetamine. Pursuant to a plea agreement, the trial court imposed a two-year incarceration, with placement in community corrections for one year and one year suspended to probation.

Nowak signed a contract with Duvall Residential Center ("Duvall") which stated that residents were only to leave Duvall with a pass, that they were only to go to locations approved and authorized in advance, and that they could only be gone for the approved length of time.

On August 14, 2017, Nowak received a hospital pass. Because Duvall did not provide transportation, it allowed one hour for travel each way and three hours at the hospital for a total of five hours. Nowak left Duvall at 10:27 a.m. and returned at 6:13 p.m.

A notice of community corrections violation was filed against Nowak on August 15, 2017. The trial court held a hearing on this and another alleged violation on October 5, 2017. At the conclusion of the hearing, the trial court found that the State had proven by a preponderance of the evidence that Nowak

violated the conditions of his community corrections placement by committing the offense of trafficking by bringing in a cell phone and failing to abide by the time conditions of his hospital pass. The court revoked Nowak's probation and his community corrections placement and ordered him to serve his entire previously-suspended two-year sentence in the Indiana Department of Correction ("DOC"). Nowak now appeals.

## Discussion and Decision

[7] Nowak concedes that the evidence presented at the hearing supports the finding that he violated the conditions of his probation, but he contends that the trial court abused its discretion because the violation was not so egregious that it warranted the revocation of his entire two-year previously-suspended sentence.

[8] "'Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled.'" *Jackson v. State*, 6 N.E.3d 1040, 1042 (Ind. Ct. App. 2014) (quoting *Prewitt v. State,* 878 N.E.2d 184, 188 (Ind. 2007)). "The trial court determines the conditions of probation and may revoke probation if the conditions are violated." *Id.*; *see also* Ind. Code § 35-38-2-3(a). "Once a trial court has exercised its grace by ordering probation rather than incarceration, the judge should have considerable leeway in deciding how to proceed." *Prewitt*, 878 N.E.2d at 188. "If this discretion were not afforded to trial courts and sentences were scrutinized too severely on appeal, trial judges might be less inclined to order probation to future defendants." *Id.* Accordingly, we review a trial court's probation violation determination for an abuse of discretion.

*Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013). "An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances or when the trial court misinterprets the law." *Jackson*, 6 N.E.3d at 1042.

[9]     Probation revocation is a two-step process. *Id.* "First, the trial court must make a factual determination that a violation of a condition of probation actually occurred." *Id.* (citing *Woods v. State*, 892 N.E.2d 637, 640 (Ind. 2008)). "Second, if a violation is found, then the trial court must determine the appropriate sanctions for the violation." *Id.* A trial court may (1) continue the defendant on probation; (2) extend the probationary period for not more than one year beyond the original period; or (3) order all or part of a previously-suspended sentence to be executed. Ind. Code § 35-38-2-3(g).

[10]    To summarize the minimal facts before us, on August 14, 2017, Nowak obtained a five-hour hospital pass, left Duvall around 10:30 a.m. and returned about 6:15 p.m. When he returned, he had a backpack and cell phone which are not allowed in the center.

[11]    Nowak testified that he left Duvall on the pass about 10:45 a.m. and returned at 6:13 p.m. He stated that he did not have bus fare and estimated that it took him two hours to walk to the hospital. He checked into the hospital at 1:56 p.m. and checked out at 2:33 p.m. with a prescription which he took to the hospital pharmacy. He called Duvall at 3:10 p.m. from the emergency room to tell them he was still there. He was told that if he was not back by 5:30 p.m. to call again.

He went to the pharmacy and waited an hour and forty-five minutes until he was told his insurance was not approved. He did not have money to pay for the medication, and the prescription was returned to him. He had checked out when he left the emergency room, and the pharmacy did not have a check in procedure so it was not possible to verify how long he was there. According to Nowak, he left the hospital at about 4:15 p.m. At 5:30 p.m., he stopped at a grocery to call and tell Duvall he was on his way, but would not be there by 5:30 p.m. Nowak brought the prescription but no medication back to Duvall with him.

[12] Nowak also testified that he brought the backpack with the cell phone in it when he was transferred from Jail I to Duvall. Furthermore, he testified that he retrieved it by asking for it to be brought from the property room at Duvall when he left for the hospital. He planned to have his baby's mother pick up the bag and take it home, but she did not show up at the hospital, and he returned to Duvall with it. The only items in the bag were the phone and some articles of clothing.

[13] Nowak testified that he had seen others return from passes with their phones, and had he been told he could not have a phone at all, he would not have brought it back to Duvall. Nowak testified that he was only given a verbal pass, not a written one. Since this was the first time he had left Duvall, he was not aware of regular procedures and just did what he was told.

Marcus Robinson ("Robinson"), a Residential Center Officer at Duvall, also testified. On August 14, 2017, he was searching residents returning from their passes. When Nowak returned at about 6:48 p.m., he had a book bag with him. Robinson testified that Nowak was not authorized to take a backpack with him on the day in question. Chief Thompson would notify the staff when permission was given to take a bag or other confiscated items out of Duvall, but he would never allow a resident to bring a confiscated item back in. In searching the bag, Robinson found a cell phone. Electronic devices are not allowed at Duvall.

Patricia Montgomery ("Montgomery") was an employment specialist for Duvall and was the person responsible for approving Nowak's hospital pass. Montgomery testified that she would have explained everything to him because he was new to Duvall. She also said that he would have been given a written pass as well as the verbal explanation. That written pass should have been returned to Duvall along with hospital papers and prescription medications, but they were not in his file. Montgomery did not have a copy of the written pass she had issued to Nowak.

[14] Montgomery testified that if a person goes to the pharmacy at the hospital and does not have insurance to pay for the prescription, the pharmacy keeps the prescription and refers the individual to the hospital's "financial people" to find out if they can get help paying for their medications. *Tr. v.* 2 at 41. She denied telling Nowak that he could call himself to say that he would be late. Proper

procedure was to have a nurse or doctor call to verify he was being held for some reason.

[15] Montgomery also testified that Nowak did not tell her he did not have money for the bus. Had he done so, she would have let him use her phone to call a ride. She also stated that the lockers in the front of Duvall were for those residents who were working, turning in their paychecks, and without a write-up within the last 30 days. They were allowed to return to the facility with their cell phones, but they had to put them into their lockers. Nowak did not have a locker.

[16] Nowak had prior rules violations at Duvall. Notices of violations were filed against him on June 17, 2017, August 7, 2017, and August 15, 2017. On October 3, 2017, a notice of probation violation was filed alleging that he failed to comply with the terms and conditions of his community corrections placement. During the hearing on Nowak's alleged violations that was held on October 5, 2017, the State presented evidence showing that Nowak was permitted to leave the community corrections facility on August 14, 2017 for a hospital visit to obtain prescription medication, that he failed to timely return to the community corrections facility, and that when he did return, he brought with him a cell phone. Testimony further showed that it was a violation of the community corrections rules for a resident to bring a cell phone or any electronic device into the facility. When he first arrived at Duvall, Nowak had been furnished with the facility's rule book, which informed residents that

electronic devices were not allowed, and there were numerous signs at the entrance that proclaimed such devices were not allowed inside the center

[17] This instance was not Nowak's first violation of community corrections policies, and the trial court had already shown leniency by not imposing his suspended sentence in his prior revocation proceedings. Nowak's first violation of community corrections had been filed because Nowak left home detention for over a month, and he was placed on strict compliance when he was returned to community corrections work release.

[18] The trial court's decision was not clearly against the logic and effect of the facts and circumstances before it, and the trial court did not abuse its discretion in revoking Nowak's probation and imposing the entire previously-suspended two-sentence.

[19] Affirmed.

[20] Bailey, J., and Pyle, J., concur.